IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CRYSTAL D. H.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cv-742-RJD[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB and SSI in July 2017 (Tr. 145, 152). Plaintiff's application was denied and she sought reconsideration. Defendant issued a *Notice of Disapproved Claim* dated December 7, 2017 (Tr. 118). After holding an evidentiary hearing, ALJ Jason Panek issued an unfavorable decision on July 31, 2019 (Tr. 12-30). The Appeals Council denied review, and the decision of the ALJ became the final agency decision (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties (Doc. 12).

## Issues Raised by Plaintiff

Plaintiff raises the following issue:

1. The ALJ failed to fully and fairly develop the record.

## Applicable Legal Standards

To qualify for DIB or SSI a claimant must be disabled within the meaning of the applicable statutes[3]. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show that there are

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

jobs existing in significant numbers in the national economy which plaintiff can perform. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.  It is important to recognize that the scope of review is limited.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).  Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).  However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

**<u>The Decision of the ALJ</u>**

In his opinion, ALJ Panek followed the five-step analytical framework described above. He found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2023.  She had not engaged in substantial gainful activity since the alleged onset date

of January 19, 2017. The ALJ found Plaintiff had severe impairments of degenerative disc disease of the cervical and lumbar spine, peripheral neuropathy, and diabetes mellitus II.

The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

The ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she should never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. She should no more than occasionally stoop, kneel, crouch, and crawl, and can occasionally reach overhead with her bilateral upper extremities. The ALJ found Plaintiff is capable of performing past relevant work as a hand packager, as actually performed.

## The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to Plaintiff's arguments.

**1. Agency Forms**

Plaintiff was born in 1968 and was 48 years old on the alleged onset date of January 19, 2017. (Tr. 145). On her application for disability benefits, Plaintiff listed the following conditions as limiting her ability to work: car accident, fixed broken nose, neck fracture, rib fracture, back fracture, numbness in feet, headaches, asthma, diabetes, hypertension, high cholesterol (Tr. 192).

### 2. Evidentiary Hearing

Plaintiff was represented by counsel at her hearing on May 21, 2019. At the hearing, Plaintiff testified that she was recently employed doing warehouse work on an assembly line, but was terminated due to her frequent bathroom usage (Tr. 34-35, 38). Plaintiff's assembly line job required her to stand on her feet, but she told her employer that she could not lift anything due to her back and neck injury (Tr. 39).

Plaintiff testified she has trouble walking and standing. She had been seeing a chiropractor for problems in her neck and back, and still experiences pain (Tr. 46). She takes over-the-counter pain medication that helps (Tr. 48). Plaintiff indicated she was not currently being treated for her neck and back issues, but her doctor was going to send her to another specialist (Tr. 48). Plaintiff testified she can sit thirty to sixty minutes before needing to move around, and can stand on her feet for thirty to sixty minutes before needing to take a break (Tr. 47).

A vocational expert also testified at the hearing (Tr. 51). The ALJ asked her a hypothetical question that corresponded to the ultimate RFC findings. The VE testified that this person could perform the past work that Plaintiff described (Tr. 53). The VE explained that as described by Plaintiff, she would classify Plaintiff's past work as hand packager, performed at sedentary (Tr. 52).

### 3. Relevant Medical Records

Plaintiff was involved in a motor vehicle accident in January 2017, wherein she began complaining of neck and back pain (Tr. 319, 390). Plaintiff underwent chiropractic treatments for her pain between February and May 2017 (Tr. 390-486). Plaintiff was recommended to receive further chiropractic treatments only on an as-needed basis on May 22, 2017 (Tr. 486).

After May 2017, Plaintiff was treated exclusively by her primary care physician Dr. Raj Sajid. On August 11, 2017, Dr. Sajid completed a physical examination finding Plaintiff had normal strength, normal balance with gait, and normal sensory functioning. Dr. Sajid advised Plaintiff to take over-the-counter Tylenol as needed for pain related to her back and neck pain (Tr. 549). An x-ray of Plaintiff's cervical spine was taken on August 18, 2017 pursuant to Dr. Sajid's order (Tr. 542). The x-ray revealed degenerative disc disease and facet arthropathy with possible significant neural foraminal stenosis at multiple levels on the left. Given Plaintiff's history of left upper extremity radicular symptoms, the reviewing physician suggested a follow-up noncontrast MRI of the cervical spine for evaluation of the exiting nerve roots (Tr. 542).

An October 2017 MRI of Plaintiff's neck showed mild posterior facet hypertrophy at one level (C5-C6) (Tr. 544). An October 2017 MRI of Plaintiff's mid-back demonstrated congenital narrowing of the thoracic spinal canal without high-grade central canal stenosis at any level, mild degenerative disc disease and facet arthropathy, and mild exaggerated thoracic kyphosis (Tr. 546). A November 2017 MRI of Plaintiff's lower back showed several abnormalities described as mild to moderate (Tr. 686). More specifically, the MRI revealed: L3-4, mild bilateral facet hypertrophic changes resulting in mild left and borderline right neural foraminal stenosis; L4-5, mild bulging of the degenerative annulus with facet hypertrophic changes resulting in moderate central spinal stenosis and mild bilateral neural foraminal stenosis with mild to moderate bilateral pre-foraminal stenosis; and L5-S1, bilateral facet hypertrophic changes resulting in moderate left and mild right neural foraminal stenosis without central spine stenosis (Tr. 686).

During examinations with Dr. Sajid in September, October, and November 2017, he noted the August 2017 and October 2017 imaging results and referred Plaintiff to several specialists,

such as a pain management specialist, orthopedic specialist, and rheumatologist (Tr. 570, 572-73, 583). During these examinations, Dr. Sajid's findings continued to be normal, finding Plaintiff had normal strength, normal motor functioning, normal sensation, and normal gait and balance (Tr. 568, 571, 574, 578, 582).

### 4. Consultative Exam

Plaintiff saw Dr. Vittal Chapa on September 14, 2017 for a consultative evaluation (Tr. 535-538). Plaintiff complained of pain in her neck and back, and indicated she tried numerous treatments for her back pain without any relief (Tr. 535). Plaintiff was unable to perform range of motion of the lumbar spine as she was in too much pain (Tr. 537). She demonstrated decreased pinprick sensation in both feet, but she had no motor weakness, normal use of both hands, and negative straight leg-raise testing bilaterally (Tr. 536-537).

### 5. State Agency Consultants' Opinions

On September 28, 2017, Lenore Gonzalez, M.D., reviewed the evidence and opined that, within one year of Plaintiff's motor vehicle accident, she could perform the full range of medium exertional activity (Tr. 64).

On December 6, 2017, Frank Mikell, M.D., reviewed Plaintiff's file and concluded Plaintiff could perform light exertional activity, except she was limited in her ability to push and/or pull with both legs, and needed to avoid concentrated exposure to noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards (Tr. 88-91). Dr. Mikell acknowledged the consultative examiner found decreased sensation in Plaintiff's bilateral feet, and normal ambulation without assistance (Tr. 90). The x-rays and MRI were not obtained as evidence prior to Dr. Mikell's review.

**Analysis**

Plaintiff argues the ALJ was required, but failed to obtain an opinion from a medical expert or a consultative examiner to translate the results of the x-rays and MRIs referenced above into an RFC assessment. Plaintiff asserts the imaging results were not obtained prior to Dr. Mikell's review and, as such, the ALJ was left to interpret the x-rays and MRI on his own, which he is not qualified to do.

Plaintiff asserts the ALJ went so far as to compare the x-rays with the MRI, finding the October 24, 2017 MRI "evidenced improvement of the degenerative disk disease and facet arthropathy with possible significant neural foraminal stenosis identified on August 18, 2017 cervical spine x-ray" (Tr. 22). Plaintiff argues that because the ALJ is prohibited from interpreting these findings, he failed to fully and fairly develop the record, which led to an unsupportable RFC assessment.

Defendant contends substantial evidence supports the ALJ's assessment of Plaintiff's impairment of the spine. Defendant asserts that regardless of what the imaging showed, the ALJ was able to evaluate Plaintiff's functioning by assessing Plaintiff's own statements, reviewing her attempts at treatment and examination findings, and considering the recommendations by her treating physician after he reviewed imaging of her spine.

The ALJ and the Commissioner are not medical experts qualified to interpret radiology reports. "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018). In two recent cases, the Seventh Circuit has held that the ALJ erred in determining for himself the significance of MRI results, rather than seeking the opinion of a medical expert. *Akin v. Berryhill*,

887 F.3d 314, 317-18 (7th Cir. 2018); *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018).

Defendant argues *Akin* and *McHenry* are not analogous to the circumstances here because in this case the imaging of Plaintiff's spine "did not stand alone in a vacuum" and other, more probative evidence existed that informed the ALJ of Plaintiff's actual ability to function. The Court disagrees. The imaging evidence in both *Akin* and *McHenry* also did not "stand alone in a vacuum" and the ALJs in those cases also considered the testimony of the plaintiffs as well as other medical evidence and medical opinions in arriving at their conclusion.

*Akin* is clear that "without an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were 'consistent' with his assessment." *Akin*, 887 F.3d at 317. This is similar to what occurred here. Indeed, the ALJ determined that Plaintiff's refusal to perform testing concerning her cervical spine with Dr. Chapa was inconsistent with the MRI scan conducted on October 24, 2017 (Tr. 22). The ALJ further opined that the October 24, 2017 MRI "evidenced improvement of the degenerative disc disease and facet arthropathy with possible significant neural foraminal stenosis identified on an August 18, 2017 cervical spine x-ray." The ALJ also found that Plaintiff's refusal to perform range of motion of the lumbar spine during Dr. Chapa's examination was belied by the findings of the MRI conducted on November 14, 2017. Thus, the ALJ was clearly interpreting imaging results to evaluate Plaintiff's credibility and limitations. This is not permissible as it clearly informed the ALJ's decision and RFC determination, even if the ALJ went on to consider other evidence. Without the input of a medical expert, the ALJ's conclusion regarding Plaintiff's limitations is not supported by the record. The Commissioner also argues that the medical opinions of reviewing physicians and normal physical exams support the ALJ's decision and, in effect, "outweigh" the

MRI findings. But that is the sort of medical conclusion that the ALJ, the Commissioner, and his lawyers are not qualified to draw.

Of course, this Court is not a medical expert qualified to determine the significance of radiology reports either, and the above discussion of the reports is not intended to suggest otherwise.

The ALJ 's error with regard to the imaging records requires remand. An ALJ's decision must be supported by substantial evidence, and the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009), internal citations omitted. The Court must conclude that the ALJ failed to build the requisite logical bridge here. Remand is required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Plaintiff was disabled during the relevant period or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and consideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: February 17, 2022**

*s/ Reona J. Daly*

**Hon. Reona J. Daly**
**United States Magistrate Judge**